## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DZMITRY PASIUKEVICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 24-3349 (RJL) |
| | ) | |
| DANIEL LAWTON, | ) | |
| Deputy Chief of Mission, U.S. Mission to | ) | |
| Poland, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION
(July 17, 2025) [Dkt. #5]

Plaintiff Dzmitry Pasiukevich ("plaintiff" or "Pasiukevich") is a citizen of Belarus who is currently living in Poland. *See* Petition for Writ of Mandamus and Complaint for Injunctive Relief ¶12 ("Compl.") [Dkt. #1]. His application for an L-1 nonimmigrant visa was refused pursuant to Section 221(g) of the Immigration and Nationality Act ("INA") and was placed into "administrative processing," a status that permits a consular officer to reconsider an applicant's case at a later date. *Id.* ¶ 20. Plaintiff claims that the defendants have unreasonably delayed in conclusively adjudicating his visa application, and so seeks an order compelling a final adjudication. Defendants move to dismiss plaintiff's complaint. *See* Motion to Dismiss ("Gov't's Mot.") [Dkt. #5]. Upon due consideration of the parties' written submissions and the relevant authorities, I will **GRANT** the defendants' motion for the reasons set forth below.

1

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pasiukevich is a citizen of Belarus but currently resides in Poland. Compl. ¶ 12. In February 2023, plaintiff's employer initiated an L-1 nonimmigrant visa petition on his behalf. *Id.* ¶ 15. In the ensuing months, plaintiff and his employer submitted the required documentation and paid the mandatory visa processing fees. *Id.* ¶¶ 17–18.

In October 2023, plaintiff attended his consular interview at the U.S. Embassy in Poland. *Id.* ¶ 19. After the interview, he was informed that his application had been "refused" pursuant to INA § 221(g), 8 U.S.C. § 1201(g).[1] *Id.* ¶ 20. Plaintiff's application was then placed into "administrative processing," *id.* ¶ 22, which means that, although the visa application was "officially refused," "th[e] refusal may (or may not) be overcome with new information at a later date." *Karimova v. Abate*, 2024 WL 3517852, at *2 (D.C. Cir. 2024). There has been no further action on his application since it was refused. Plaintiff has inquired about the status of his application with the U.S. Embassy in Poland multiple times and was advised that his administrative processing remains ongoing. *Id.* ¶¶ 26–27. Pasiukevich alleges that the delay in adjudicating his visa application has harmed him in his career and family life. *Id.* ¶¶ 4–6.

In November 2024, plaintiff filed a Petition for a Writ of Mandamus and Complaint for Injunctive Relief against Daniel Lawton, Deputy Chief of Mission at the U.S. Embassy in Poland, and Antony Blinken, Secretary of the U.S. Department of State

---

[1] Under § 221(g), a consular officer must refuse to issue a visa if it appears "from statements in the application, or in the papers submitted therewith" that the alien is ineligible for a visa under any "provision of law" or if the "officer knows or has reason to believe that such alien is ineligible to receive a visa." 8 U.S.C. § 1201(g). According to the Foreign Affairs Manual, "A refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B).

("defendants" or "the Government"). He brings two causes of action: The first seeks injunctive relief for unreasonable delay under Section 706(1) of the Administrative Procedure Act ("APA"), and the second seeks a writ of mandamus. *Id.* ¶¶ 31–52. Plaintiff asks the Court to issue an order mandating that defendants process his visa.

On January 31, 2025, the Government moved to dismiss plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a brief in opposition, ("Pl.'s Opp.") [Dkt. #6], and the Government filed a reply brief, ("Gov't's Reply") [Dkt. #8]. The motion is now ripe for decision.

## II.   LEGAL STANDARDS

When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 2020 WL 674778, at *2 (D.D.C. Feb. 11, 2020) (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The facts alleged "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In asserting a claim of unreasonable agency delay under the APA, a plaintiff "must first allege that the agency 'failed to take a discrete agency action that it is required to take'" by law.  *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *see also* 5 U.S.C. § 706(1) (granting courts the authority to "compel agency action unlawfully withheld or unreasonably delayed").  Likewise, to obtain a writ of mandamus, a petitioner must show, among other threshold requirements, that the Government possesses "a clear duty to act" under the circumstances.  *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (citation omitted); *see also* 28 U.S.C. § 1361 (granting district courts original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff").

"[T]he standards for obtaining relief" through the APA and Mandamus Act in this context are "essentially the same."  *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (citation omitted).  Thus, when a plaintiff seeks to compel unreasonably delayed agency action pursuant to both statutes, "those claims," at least at the threshold level, "merge."  *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d. 1, 17 (D.D.C. 2022).  Under this fused analysis, a plaintiff "must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency

4

failed to take that action." *Sharifishourabi v. Blinken*, 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024)).

## III.    ANALYSIS

The Government argues that plaintiff's claims fail because there is no non-discretionary duty requiring a consular officer to take any further action on plaintiff's visa application. Gov't Mot. at 4–8. I agree.

Our Circuit recently rejected unreasonable delay claims very similar to the ones at issue here. In *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024), the Circuit Court held that the Government has no clear, non-discretionary duty to further process or adjudicate a visa application once it has been refused by a consular officer under INA Section 221(g), 8 U.S.C. § 1201(g).[2] There, as here, the plaintiff had been interviewed for a visa, but her application was "refused" and "placed…in administrative processing." *Id*. at *2. The plaintiff similarly claimed that the subsequent delay was unlawful and, "[i]nvoking both the Administrative Procedure Act and the Mandamus Act," she "asked the court to 'compel' the consular officer to perform her duty to finally adjudicate her visa." *Id*. The Court of Appeals refused to grant that relief because the plaintiff had "not identified any law 'plainly prescrib[ing]' that the consular officer not put an officially refused visa application in administrative processing," a required element of a claim under the Mandamus Act or APA § 706. *Id*. at *3 (quoting *Interstate Commerce Comm. v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)).

_____

[2] Judges in this District are split as to whether *Karimova* is precedential. *See, e.g.*, *Aramnahad v. Rubio*, 2025 WL 973483, at *6 (D.D.C. Mar. 31, 2025) ("Courts in this District have taken different approaches on what precedential effect, if any, to give *Karimova*."). But this Court need not opine on whether *Karimova* is strictly binding. I am persuaded by *Karimova*'s sound reasoning and will follow it here.

It is true that, when a visa applicant "execute[s]" his application "by bringing the required paperwork to an in-person interview with a consular officer," "the consular officer—by regulation—*must* issue or refuse the visa." *Id.* at *1 (citing 9 FAM § 504.1-3(a), (g); 22 C.F.R. § 42.81(a)) (quotation marks omitted).  But as the Court of Appeals explained in *Karimova*, a visa applicant whose application is refused and then placed into administrative processing has still "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." *Id.* at *4 (citing 22 C.F.R. § 42.81; 8 U.S.C. § 1201(g)).  *See also*, *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024) ("[T]he *only* duty that the statute or regulations impose on consular officers is a duty to grant or refuse a visa…The statute does not create an additional duty to engage in post-refusal reconsideration of the visa application.").  Plaintiff thus cannot show that defendants failed to take a discrete agency action that they were required to take, precluding relief under both the APA and Mandamus Act.  *Rezvani v. Rubio*, 2025 WL 1293358, at *1 (D.D.C. May 5, 2025) (citing *Karimova*, 2024 WL 3517952, at *1).

Plaintiff argues that *Karimova* is not on point because, in that case, the plaintiff relied *only* on Section 555(b) of the APA[3] as the source of the consular officer's alleged duty to act.  Pl.'s Opp. at 22.  Whereas here, in addition to relying on Section 555(b) of the APA, plaintiff has also invoked additional specific legal authorities that he says require the Government to act.  *Id.*  These include:  8 U.S.C. § 1202(d) ("All nonimmigrant visa applications shall be reviewed and adjudicated by a consular

---

[3] That provision states that "each agency shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time."  5 U.S.C. § 555(b).

officer."); 5 U.S.C. § 702 ("a person suffering legal wrong because of agency action is entitled to judicial review thereof"); 8 U.S.C. § 1571(b) (applications for immigration benefits "should be completed no later than 180 days after the initial filing of the application"); and 22 C.F.R. § 41.121 (requiring that once a nonimmigrant visa application "has been properly completed and executed," a consular officer "must issue the visa, refuse the visa, or…discontinue granting the visa."). Compl. ¶¶ 33–40.

Pasiukevich's attempts to identify a source for the duty he claims. However, he "misses the broader thrust of *Karimova*, which is that an INA § 221(g) refusal followed by administrative processing *is* a refusal." *Rezvani*, 2025 WL 1293358, at *1. Thus, under the persuasive logic of *Karimova*, it is unclear how any provision of law requiring that visas be either issued or refused, or otherwise mandating "agency action," *see* 5 U.S.C. § 706(1), could remain unsatisfied by the § 221(g) refusal that plaintiff received. *Id. See also Ibrahim v. Spera*, 2024 WL 4103702, at *3 (D.D.C. 2024) (rejecting the argument that *Karimova* is "confined to the issue of whether the APA alone created a duty for the Department of State to complete administrative processing" because "one cannot read *Karimova* as saying anything other than a 221(g) refusal and placement in administrative processing was a conclusion").

In short, after a consular officer refuses a visa application under Section 221(g) of the INA, there is no additional clear statutory or regulatory duty to act. This precludes relief under the APA or Mandamus Act here.[4] This result is hardly surprising given the

---

[4] The Government also argues that, because plaintiff has received the visa refusal to which the law entitles him, his claims also fail under the consular non-reviewability doctrine. Gov't's Mot. at 15–18. "Th[is]

longstanding principle that "the "admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)).  As a result, these sorts of claims "generally fall outside the Judicial Branch's wheelhouse." *Karimova*, 2024 WL 3517852, at *5 (citing *Muñoz*, 602 U.S. 899, 907 (2024)).

**IV.    CONCLUSION**

Because Pasiukevich cannot identify a clear, non-discretionary duty requiring a consular officer to take any further action on his visa application, the Court will **GRANT** the Government's Motion to Dismiss.  An Order consistent with the above accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).  Plaintiff contends that the doctrine of consular non-reviewability does not apply because he is merely "challeng[ing] the consular officer's *delay* in adjudicating his visa application through completion—not the refusal itself." Pl.'s Br. at 24–25.  There is no need for this Court to decide whether the non-reviewability doctrine applies here.  *See, e.g., Karimova*, 2024 WL 3517842, at *6 (declining to decide the question of whether the non-reviewability doctrine applies); *Rezvani*, 2025 WL 1293358, at *2 (same); *Amjad v. Schofer*, 2024 WL 4416984, at *1 n.2 (D.D.C. Oct. 4, 2024) (same); *Hemmat v. Blinken*, 2024 WL 4210658, at *3 (D.D.C. Sept. 17, 2024) (same); *Datta v. Rubio*, 2025 WL 752643, at *6 (D.D.C. Mar. 10, 2025) (same).  I will gladly leave that question for another day!